UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Case No.

JOHN D. MILLER,

Hon.

      Plaintiff,

v

KÄRCHER NORTH AMERICA,
INC., a Colorado Corporation.

      Defendants.

---

## COMPLAINT AND  JURY DEMAND

NOW COMES Plaintiff, JOHN D. MILLER, by and through his attorneys, CUMMINGS, McCLOREY, DAVIS & ACHO, and states the following allegations and complaints:

### PARTIES

1. Plaintiff John D. Miller is a resident of Lapeer County, Michigan.

2. Kärcher Norther America is a global corporation and entity with its principal place of business in Aurora, Colorado.

### JURISDICTION AND VENUE

3. This Honorable Court has diversity jurisdiction as is embodied in U.S.C. § 1332, which provides that "[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between ... citizens of different states." 28 U.S.C. § 1332.

4. Given that Plaintiff and Defendant are considered citizens of different states and the amount in controversy exceeds $75,000, this Court has diversity jurisdiction.

5. Plaintiff seeks damages including back pay and front pay for the remainder of the time he intended to be employed with Defendant, which exceeds the amount in controversy requirements for diversity jurisdiction.

6. Venue is proper in the Eastern District of Michigan pursuant to 28 U.S.C §1391(b)-(c). The events that are the subject of the action primarily occurred in the State of Michigan, within the Eastern District.

## STATEMENT OF FACTS

7. Plaintiff John Miller began working for Windsor (now a Kärcher subsidiary) in March of 2004 as a full-time account manager.

8. Plaintiff Miller has had experience in the industrial and commercial cleaning industry since 1995 when he worked for Industrial Cleaning Supply Co.

9. For background education, Plaintiff Miller has a bachelor's degree in business management and a master's degree in public administration.

10. In 2004, Windsor was acquired by Castle Rock Industries and Plaintiff Miller began working as an Account Manager under Gary Rugg, Regional Sales Director for the Northeastern U.S. market.

11. In 2007, Castle Rock was acquired by Alfred Kärcher SE & Co. KG and became part of Kärcher North America, at which time Plaintiff Miller became an employee of Kärcher.

**Plaintiff Excelled in His Positions, Reflected in his Merit Pay Raises, Promotions, and Performance Reviews**

12. For more than a decade, Plaintiff Miller worked for Kärcher (or companies Kärcher bought out) and excelled in his job performance.

13. For the past ten (10) years, Plaintiff Miller received either "Fully Competent", "Commendable", or "Distinguished" performance reviews.

14. Plaintiff Miller was never given a negative performance review or any type of demerit in his sixteen plus years of service with Kärcher and its subsidiaries.

15. Actually, Plaintiff Miller received merit pay increases in almost every year he was with Kärcher or one of its subsidiaries.

16. Further, Plaintiff Miller hit his bonus and incentive pay on several occasions during his tenure and most recently in 2017, 2018 and 2019.

17. Plaintiff Miller was invited to present at companywide sales meetings in Colorado on multiple occasions where he earned the nickname "The Senator" because he was so well spoken.

18. Plaintiff Miller took his sales territory from 1 million dollars in annual revenue to 3.1 million dollars in his tenure.

19. Using his long-standing relationships from his years in the industry, Plaintiff was able to expand Kärcher's business in his region.

20. Plaintiff Miller was available to help customers at all hours of the day, even if it required him to drive across the state, work early in the morning, late at night, and on weekends when needed.

**Plaintiff Miller Was Upfront and Open About his Position as a Student and Attorney During his Tenure with Kärcher**

21. During his time with Kärcher, Plaintiff Miller decided to further his education by attending law school at Thomas M. Cooley Law School in Lansing.

22. Plaintiff Miller graduated with his Juris Doctor from Cooley in 2010, all while working full time with Kärcher and keeping positive performance reviews.

23. Never did anyone tell Plaintiff Miller that he was required to only work for Kärcher, in fact, he was told that Kärcher was not a 9-5 job and could be worked alongside other obligations.

24. During his 2010 performance review, Lynn Oxenreider, then Regional Sales Director for the Northeast Region, noted on Plaintiff Miller's review that he was carrying a full job outside of his position with Kärcher, but still praised Plaintiff's abilities.

25. Kärcher and its leadership were well aware that Plaintiff Miller had gotten his law degree and wanted to pursue opportunities in the legal field while also working for Kärcher.

26. After graduating from law school, Plaintiff Miller spoke with the regional director, Gary Rugg, about advancing within Kärcher using his degree.

27. Mr. Rugg told him to call Jim Lombard, then Executive Vice President of Sales, and speak with him regarding any available opportunities.

28. Eventually, Plaintiff Miller spoke with the CEO of Windsor (which was then a subsidiary of Kärcher), Dennis Meagher, about opportunities within the company at a 2011 trade show.

29. Although Plaintiff Miller did not end up pursing any legal positions with Kärcher, supervisors within the company were well aware of his new degree and never once said that he would have to give up his position at Kärcher to pursue a job in the legal field.

30. After he graduated from law school, Plaintiff Miller began working as an attorney with a local law firm and continued working there for three years, all while continuing to perform his obligations and duties with Kärcher.

31. Again, nobody from Kärcher told Plaintiff Miller that he wasn't able to work as an attorney and his job performance never was questioned.

32. After working for a law firm, Plaintiff Miller took a position with the Lapeer County Prosecutors Office as a Chief Assistant Prosecuting Attorney in July 2013.

33. Once again, Plaintiff Miller was able to perform his job duties as an APA with Lapeer County without it affecting his role with Kärcher.

34. After three plus years with Lapeer County, Plaintiff Miller returned to private practice until 2021.

35. During these three years working as an attorney, Plaintiff Miller's job performance never suffered, nor did he ever have a negative performance review.

36. In 2020, Plaintiff Miller decided to leave private practice and run for Prosecuting Attorney of Lapeer County.

37. During 2020, Plaintiff Miller continued to work for Kärcher while also vying for the position of Prosecuting Attorney.

38. For all intents and purposes, Plaintiff Miller secured the position of Prosecuting Attorney in August of 2020 when he won his primary election.

39. Again, Plaintiff Miller never received any complaints from Kärcher or his supervisor, Mike Dutcher, about running for Prosecutor or taking the position.

40. Plaintiff Miller was officially sworn in as Lapeer County Prosecutor on January 4, 2021.

41. During his time as a practicing attorney, Plaintiff Miller never received a poor performance review and continued to increase his territories sales, making bonus in 2017, 2018, and 2019.

42. Plaintiff Miller always had his work phone and computer with him in case a customer or a distributor needed his assistance.

43. If there was ever an instance where he would be unavailable due to a trial, he would use personal time off to ensure he wasn't taking away from his duties at either job.

44. It was never suggested to Plaintiff Miller that he would need to choose between jobs, and he never let either of his positions get in the way of the other.

**Plaintiff Miller Made a Complaint to Mike Dutcher Regarding Price Fixing**

45. In January 2021, Plaintiff Miller was working with Grand Valley State University (GVSU) to provide them with Kärcher products through a local distributor in Spring Lake, Michigan, Nichols Company.

46. Like many other public universities, GVSU required an open bid process for contracts.

47. While Nichols would bid for the contract, GVSU required at least three total bids for every open contract.

48. Plaintiff Miller and Mike Dutcher had a conversation about this process in January of 2021, in which Mr. Dutcher told Plaintiff Miller to procure two additional "courtesy bids."

49. It was Plaintiff Miller's understanding that Mr. Dutcher was asking him to go to other distributors that Miller sold Kärcher products to and get them to overbid on the GVSU job to ensure that Nichols got the contract.

50. In reality, these other supplies had no interest or incentive to fulfill the contract by GVSU, they would just bid a higher price so that Nichols could secure the bid.

51. Plaintiff Miller, being experienced in the practices of the industry as well as a practicing attorney, realized this was bid rigging, a form of price fixing that is illegal and unethical.

52. Upon being instructed to do this, Plaintiff Miller told Mr. Dutcher that he did not think this practice was legal or ethical, and that he would not do it.

53. In reply, Mr. Dutcher simply told Plaintiff Miller to make it happen.

**Plaintiff Miller was Terminated Because he Would not Partake in Illegal Activity**

54. Shortly after bringing this issue to the attention of Mr. Dutcher, Plaintiff Miller received a

return phone call from Mr. Dutcher.

55. This call was to inform Plaintiff Miller that he either needed to resign or was going to be terminated.

56. Plaintiff Miller told Mr. Dutcher that he had no intention of resigning and asked about a severance package for being terminated.

57. Mr. Dutcher stated that there would be no severance and terminated Plaintiff Miller officially on February 23, 2021.

58. The reason cited for this termination was that "Employee was working two jobs, he was not meeting performance expectations [*sic*]. Dealers and Customers where [*sic*] not receiving his attention, they did not rely on John as he was not available." (Exhibit 1, Separation Notice)

59. However, Plaintiff Miller had not received any complaints from dealers or customers, and Kärcher was well aware that he was a practicing attorney.

60. Additionally, Plaintiff Miller always had his phone and computer with him to assist dealers and customers if they needed it.

61. Verbally, Mr. Dutcher told Plaintiff Miller that he hadn't been traveling enough.

62. Mr. Dutcher was apparently basing this off of information from a GPS tracker that had been put on Plaintiff Miller's company vehicle.

63. Mr. Dutcher had told Plaintiff Miller that this tracker was for insurance purposes and that it would not be used to track his physical location, but that was apparently not the case.

64. The reason Plaintiff Miller had been traveling less in the past year was because it was 2020 and there was a global pandemic of COVID-19.

65. In early spring of 2020, Michigan Governor Gretchen Whitmer declared a state-wide shutdown of all non-essential services.

66. This shutdown continued, at least in part, for the entire duration of 2020.

67. During this time, any job that was non-essential was required to work remotely if possible.

68. Plaintiff Miller continued to service customer needs remotely, and only visited customers or distributors when absolutely necessary in order to comply with the COVID orders. Numerous customers and distributors who purchased Kärcher products through Plaintiff Miller prohibited in person visitations to their locations during this time.

69. Further, sales and purchase amounts decreased greatly during 2020 due to the shutdown and economic impact.

70. Plaintiff Miller did what he could to increase sales in Kärcher products during this time, but many of Kärcher's large customers put orders on hold due to the pandemic.

71. One large area of sales for Kärcher was Universities, such as Michigan State University, University of Michigan and GVSU, and their need for cleaning supplies decreased during 2020 because students were not on campus.

72. Regardless of the economic situation, Plaintiff Miller continued to perform his job duties thoroughly.

73. At no point during 2021 or 2020, until his termination, did Plaintiff Miller ever receive a warning or reprimand from Mr. Dutcher about his customer service and availability to clients.

74. These issues only appeared once Plaintiff Miller made the complaint to Mr. Dutcher regarding the illegal and unethical business practices.

75. After three decades of working in the industry, and over a decade working directly for Kärcher, Plaintiff Miller was terminated less than a month after complaining about illegal and unethical behavior.

76. During his decade plus with Kärcher, Plaintiff Miller held a second job nearly the entire time

with no complaints from anyone at Kärcher about it.

77. The reasons given for Plaintiff's termination were simply excuses to fire him because he would not go along with the bid rigging scheme.

## COUNT I

### WRONGFUL TERMINATION IN VIOLATION OF MICHIGAN PUBLIC POLICY

78. Plaintiff incorporates all preceding paragraphs by reference, as if fully alleged herein.

79. Colorado Courts have stated an exception to an employee's "at will" employment when an employee is discharged in retaliation for refusing to partake in an action that is illegal or against public policy.

80. A public policy exception allows at-will employees to bring a claim for wrongful discharge if they allege termination as a result of conduct that is protected or encouraged as a matter of public policy. *Suchodolski v Michigan Consol Gas Co,* 412 Mich 692, 316 NW2d 710 (1982).

81. The common law exception to at-will employment have "been found to be implied where the alleged reason for the discharge of the employee was the failure or refusal to violate a law in the course of employment." *Id.*

82. Plaintiff Miller was directed by Mike Dutcher to perform an illegal act in the form of bid rigging when Mr. Dutcher instructed Plaintiff Miller to secure "courtesy bids" for the GVSU contract.

83. This direction by Mr. Dutcher to Plaintiff Miller violated federal law under Anti-trust laws as well as general public policy against anti-trust behavior. Plaintiff Miller was acting within his duties as an employee and citizen to refuse to engage in illegal activity that would harm the public and create mistrust.

84. The use of courtesy bids, or complementary bids, is a form of bid rigging that is unlawful under Section 1 of the Sherman Act.

85. After working for Kärcher or a Kärcher subsidiary for over a decade, and working in the industry for nearly two decades, Plaintiff was terminated less than a month after his refusal to perform this illegal activity.

86. Plaintiff Miller has never had disciplinary issues or performance issues while working with Kärcher, nor has he ever had an issue with working another position as an attorney along with his position at Kärcher.

87. Plaintiff Miller's termination came as a direct result from his refusal to partake in the bid rigging scheme that he was instructed to perform.

88. Plaintiff Miller told Mr. Dutcher explicitly that Plaintiff Miller, given his experience and education, believed this scheme was illegal.

89. Therefore, Mr. Dutcher was well aware that Plaintiff Miller believed this scheme was unlawful and against public policy.

90. Further, Mr. Dutcher was certainly aware of the unlawful nature of this action and would be fearful that Plaintiff Miller's refusal would jeopardize Defendant's ability to continue.

91. Plaintiff Miller's termination for refusing to partake in an illegal activity was retaliation against public policy and was unlawful termination.

**WHEREFORE,** the Plaintiff respectfully requests that this Honorable Court enter a judgment holding the Defendants liable for back pay, front pay, embarrassment and humiliation, pain and suffering, harm to reputation, exemplary damages, interests, costs, attorney fees, and any other such relief that this Court deems just and equitable.

Respectfully submitted,

**CUMMINGS, McCLOREY, DAVIS & ACHO, P.L.C.**

By:       /s/ *James R. Acho*
              **JAMES R. ACHO**  (P62175)
              17436 College Parkway
              Livonia, MI  48152
              (734) 261-2400
              Attorney for **Plaintiff**

Dated: April 15, 2022

## JURY DEMAND

NOW COMES the Plaintiff, John D. Miller, by and through his attorneys, Cummings, McClorey, Davis & Acho, P.LC., and hereby demands a Jury Trial in the above-referenced matter.

Respectfully submitted,

**CUMMINGS, McCLOREY, DAVIS & ACHO, P.L.C.**

By:       /s/ *James R. Acho*
              **JAMES R. ACHO**  (P62175)
              17436 College Parkway
              Livonia, MI  48152
              (734) 261-2400
              Attorney for **Plaintiff**

Dated: April 15, 2022