UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN D. MILLER,

Plaintiff,                              Case No. 22-cv-10808

v.                              U.S. District Court Judge
                                        Gershwin A. Drain

KÄRCHER NORTH AMERICA, INC.,

Defendant.

_____/

## OPINION AND ORDER DENYING DEFENDANTS' MOTION TO DISMISS (ECF No. 6)

### I. INTRODUCTION

On April 15, 2022, Plaintiff John D. Miller initiated the instant wrongful termination action against Defendant Kärcher Norther America, Inc. ("Kärcher"). *See* ECF No. 1. Presently before the Court is Defendant's Motion to Dismiss Plaintiff's Complaint and Jury Demand, filed on June 10, 2022. *See* ECF No. 6. Plaintiff filed a timely response, *see* ECF No. 7, and Defendant replied, *see* ECF No. 8. Upon review of the Parties' submissions, the Court concludes that oral argument will not aid in the disposition of these matters. Therefore, the Court will resolve the

1

Motions on the briefs.  *See* E.D. Mich. LR 7.1(f)(2).  For the following reasons the Court **DENIES** Defendant's Motion to Dismiss (ECF No. 6).

## II.   BACKGROUND

### A. Factual Background

In March 2004, Mr. Miller began working for Windsor, now a Kärcher subsidiary, as full-time account manager.  ECF No. 1, PageID.2.  Later that year, Windsor was acquired by Castle Rock Industries, which was then acquired by Alfred Kärcher SE & Co. KG, a German company, and became part of Kärcher North America.  *Id*.  As alleged in the Complaint, Mr. Miller had a successful career at Kärcher: he was designated "Fully Competent," "Commendable," or "Distinguished" in the performance reviews covering his last ten years of service, and he never received a negative performance review or any type of demerit in his entire sixteen years of employment.  *Id.* at PageID.3.  Instead, Mr. Miller received merit pay increases almost every year and bonus and incentive pay on several occasions.  *Id*.  Mr. Miller was invited to present at companywide sales meetings on multiple occasions and expanded his sales territory from $1 million in annual revenue to $3.1 million.  *Id*.

While at Kärcher, Mr. Miller decided to attend law school at Thomas M. Cooley Law School in Lansing, Michigan.  *Id.* at PageID.3.  Mr. Miller continued to

work full-time at Kärcher and continued to receive positive performance reviews. *Id.* at PageID.4. Indeed, during his 2010 performance review, Lynn Oxenreider, then Regional Sales Director for the Northeast Region, noted that Mr. Miller was working a full job outside of his position with Kärcher but still performing well. *Id.* After Mr. Miller graduated with his Juris Doctorate in 2010, he discussed the possibility of using his law degree to advance within Kärcher with Regional Director Gary Rugg and Windsor CEO Dennis Meagher. *Id.*

Mr. Miller did not end up pursuing legal positions within Kärcher. *Id.* Instead, he began working as an attorney with a local firm while continuing to work at Kärcher. *Id.* In July 2013, Mr. Miller became a Chief Assistant Prosecuting Attorney with the Lapeer County Prosecutors Office, where he stayed for about three years before returning to private practice. *Id.* at PageID.5. During 2020, Mr. Miller ran for Prosecuting Attorney of Lapeer County while still working at Kärcher. *Id.* He won the primary election in August 2020 and never received any complaints from his supervisor, Mike Dutcher, or anyone at Kärcher about running for, or taking, the position. *Id.* Mr. Miller was thus sworn in on January 4, 2021. *Id.* He maintains that he always kept his Kärcher phone and computer with him while working as an attorney in case a Kärcher customer or distributor needed his assistance. *Id.* He further asserts that he used his personal leave whenever he would be unavailable due to trial. *Id.*

3

In January 2021, Mr. Miller had a conversation with Mr. Dutcher that led him to believe he was being asked to engage in bid rigging for a contract with Grand Valley State University (GVSU). *Id.* at PageID.6. Specifically, Mr. Miller alleges that Mr. Dutcher instructed him to obtain two "courtesy bids" because GVSU requires at least three bids for every contract. *Id.* Mr. Miller told Mr. Dutcher he did not think this practice was "legal or ethical," but Mr. Dutcher told him "to make it happen." *Id.* Shortly thereafter, Mr. Dutcher called Mr. Miller and told him that he needed to resign or he was going to be terminated. *Id.* at PageID.7. Mr. Miller was denied a severance package and terminated on February 23, 2021. *Id.* His Separation Notice states that he was terminated because he "was working two jobs" and "not meeting performance expectations." *Id.* Specifically, "Dealers and Customers [were] not receiving his attention" and could "not rely on [Mr. Miller] as he was not available." *Id.* Mr. Dutcher also verbally told Mr. Miller that he had not been traveling enough. *Id.* at PageID.7. This was despite the state-wide shutdown declared in response to the COVID-19 Pandemic and Mr. Miller working remotely. *Id.* at PageID.7–8.

## B. Procedural Background

Plaintiff brings a single claim for wrongful termination in violation of Michigan public policy. ECF No. 1, PageID.9. Defendant moves to dismiss Plaintiff's Complaint for failure to state a claim pursuant to Federal Rule of Civil

Procedure 12(b)(6).  ECF No. 6.  Specifically, Defendant asserts that Plaintiff has already filed a complaint and amended complaint based on the facts underlying this matter in the United States District Court for the District of Colorado: *Miller v. Kärcher North America, Inc.*, No. 1:21-cv-01552-MEH (D. Colo.).  *Id.* at PageID.21–22 (citing ECF Nos. 6-1, 6-2).  The first Colorado complaint, filed on June 9, 2021, failed to properly assert subject matter jurisdiction, and was amended on September 21, 2021.  *Id.*  In the Colorado complaints, which are otherwise substantively identical to the instant Complaint, Plaintiff alleged that he was terminated in violation of Colorado public policy after refusing to engage in the "courtesy bid" scheme and informing Mr. Dutcher that Plaintiff would contact the Department of Justice (DOJ) to determine whether the practice was illegal.  ECF No. 6-1, PageID.38, 42; ECF No. 6-2, PageID.51, 55.

Defendant moved in the Colorado District Court to dismiss the amended complaint, arguing Michigan law applied to Plaintiff's claim and Plaintiff's claim was precluded by Section 2 of Michigan's Whistleblower Protection Act, Mich. Comp. Laws § 15.362 (WPA).  *Id.* at PageID.22; ECF No. 6-3.  The Colorado District Court found that Michigan law applied, ECF No. 6-4, PageID.80, but declined to decide whether Plaintiff's claim was precluded by the WPA or whether Plaintiff had adequately pled a claim for wrongful termination under Michigan law because he only asserted a claim under Colorado law, *id.* at PageID.81, 83.  Plaintiff

voluntarily dismissed the Colorado matter, ECF No. 6-5, so that it could be filed in this District.

In the instant Motion to Dismiss, Defendant contends that Plaintiff cannot distance himself from the Colorado action by omitting the allegation that he told Mr. Dutcher he was going to ask the DOJ about the "courtesy bid" scheme, and the Court can take judicial notice of his previous filings as public records.  ECF No. 6, PageID.25–26.  Defendant further argues that, in Michigan, a public policy claim cannot be sustained if there is an applicable law prohibiting retaliatory discharge for the conduct at issue and that the WPA provides a wrongful discharge remedy to an at-will employee that reports or is about to report a violation or suspected violation of a law, regulation, or rule to a public body.  *Id.* at PageID.26.  Finally, Defendant asserts that Plaintiff's claim is time-barred by the WPA's 90-day statute of limitations, even if the matter is related back to earliest-filed Colorado complaint.  ECF No. 6, PageID.28.

Plaintiff counters that his claim is not precluded by the WPA because he never stated an intention to report Mr. Dutcher or anyone at Kärcher to any authority.  ECF No. 7, PageID.106.  Instead, he wanted clarification from the DOJ about the legality of the "courtesy bid" practice in accordance with the DOJ's custom of issuing opinions to allow people to anonymously review the legality of numerous issues.  *Id*.

6

As such, Plaintiff maintains that he stated a claim for wrongful termination in violation of Michigan public policy. *Id.* at PageID.107–09.

For the reasons discussed below, the Court concludes Plaintiff's claim is not precluded by the WPA. As such, Defendant's Motion to Dismiss must be denied.

### III.   LAW & ANALYSIS

#### A. Legal Standard

Federal Rule of Civil Procedure 12(b)(6) allows a district court to assess whether the plaintiff has stated a claim upon which relief may be granted. To withstand a motion to dismiss pursuant to Rule 12(b)(6), a complaint must comply with the pleading requirements of Federal Rule of Civil Procedure 8(a)(2). *See Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009). Rule 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks omitted) (quoting Fed. R. Civ. P. 8(a)(2); *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). To meet this standard, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see also Iqbal*, 556 U.S. at 678–80 (applying the plausibility standard articulated in *Twombly*).

7

When considering a Rule 12(b)(6) motion to dismiss, the Court must construe the complaint in the light most favorable to the plaintiff and accept all his factual allegations as true. *Lambert v. Hartman*, 517 F.3d 433, 439 (6th Cir. 2008).  While courts are required to accept the factual allegations in a complaint as true, *Twombly,* 550 U.S. at 556, the presumption of truth does not apply to a claimant's legal conclusions. *See Iqbal,* 556 U.S. at 678.  Therefore, to survive a motion to dismiss, the plaintiff's pleading for relief must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Ass'n of Cleveland Fire Fighters v. City of Cleveland,* 502 F.3d 545, 548 (6th Cir. 2007) (quoting *Twombly,* 550 U.S. at 555) (internal citations and quotation marks omitted).

The district court generally reviews only the allegations set forth in the complaint in determining whether to grant a Rule 12(b)(6) motion to dismiss; however, "matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint, also may be taken into account." *Amini v. Oberlin College*, 259 F. 3d 493, 502 (6th Cir. 2001) (emphasis and citation omitted). Documents attached to a defendant's "motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [his]

claim."[1]  *Id.*; *see also Commercial Money Ctr, Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 336 (6th Cir. 2007).

### B. Discussion

As discussed *supra*, the Parties dispute whether Plaintiff's claim for wrongful termination in violation of public policy is precluded by the WPA.  "[U]nder Michigan law, '[a] public policy claim is sustainable . . . only where there also is not an applicable statutory prohibition against discharge in retaliation for the conduct at issue.'"  *Allen v. Charter Cnty. of Wayne*, 192 F. App'x 347, 353 (6th Cir. 2006) (alterations in original) (quoting *Dudewicz v. Norris–Schmid, Inc.*, 443 Mich. 68, 503 N.W.2d 645, 650 (1993)).  Thus, Michigan courts have held that "when a plaintiff alleges discharge in retaliation for engaging in activity protected by the WPA, '[t]he WPA provides the exclusive remedy for such retaliatory discharge and consequently preempts common-law public-policy claims arising from the same activity.'"  *McNeill-Marks v. Midmichigan Med. Ctr.-Gratiot*, 316 Mich. App. 1, 25, 891 N.W.2d 528, 540 (2016) (quoting *Anzaldua v. Neogen Corp.*, 292 Mich. App. 626, 631, 808 N.W.2d 804, 808 (2011)).  "However, if the WPA does not apply, it

---

[1] Although not referenced in the instant Complaint, Plaintiff does not dispute that the Court can consider the filings in the Colorado action.  *See generally* ECF No. 7. Indeed, Plaintiff attaches his amended Colorado complaint to his Response to Defendant's Motion to Dismiss Complaint.  ECF No. 7, PageID.112–22.

provides no remedy and there is no preemption." *Anzaldua*, 292 Mich. App. at 631, 808 N.W.2d at 808.

A "'[p]rotected activity' under the WPA consists of (1) reporting to a public body a violation of a law, regulation, or rule; (2) being about to report such a violation to a public body; or (3) being asked by a public body to participate in an investigation." *McNeill-Marks*, 316 Mich. App. at 16–17, 891 N.W.2d at 536 (quoting *Chandler v. Dowell Schlumberger Inc.*, 456 Mich. 395, 399, 572 N.W.2d 210 (1998)). As relevant here, the Michigan Supreme Court has noted that the "about to report" prong is meant to "protect conscientious employees who intended to, but were discharged in retaliation before they could, report." *Shallal v. Cath. Soc. Servs. of Wayne Cnty.*, 455 Mich. 604, 612, 566 N.W.2d 571, 575 (1997). The *Shallal* Court further noted that "*Webster*'s defines 'about' as '*on the verge of*' when followed by an infinitive, such as 'to leave,' or in this case, 'to report.'" *Id.* at 612, 566 N.W.2d 571(emphasis added) (quoting *Random House Webster's College Dictionary* (1995)). It thus connotes a sense of immediacy.

In *Hays v. Lutheran Social Servs. of Mich.*, 300 Mich. App. 54, 832 N.W.2d 433 (2013), the plaintiff worked as a home-healthcare provider. While she was on assignment in a client's home, he smoked marijuana in her presence. *Id.* at 57, 832 N.W.2d at 435. The plaintiff discussed the client's drug use with her supervisor and other coworkers. *Id.* She also contacted the Bay Area Narcotics Enforcement Team

(BAYANET) and asked "about the potential consequences of someone knowing about the drug use of another and not reporting it." *Id.*  At the conclusion of the conversation, when the BAYANET official asked if she would like to take any further action, the plaintiff declined to do so.  *Id.*  The Michigan Court of Appeals found that the plaintiff had not made a report under the WPA because her "only concern was to obtain information about her hypothetical liability, not to provide law enforcement officials with any concrete facts from which they could actually investigate or enforce the law." *Id.* at 62, 832 N.W.2d at 438.

The *Hays* Court likewise found that the plaintiff had not established she was "about to report" under the WPA because "simply . . . call[ing] BAYANET to inquire about her potential liability d[id] not demonstrate that she intended to take any further action and actually report the behavior to a public body." *Id.* at 63, 832 N.W.2d at 438.  Moreover, there was "no evidence that [the] plaintiff informed anyone that she was about to take further action and report the behavior to a public body." *Id.* at at 63, 832 N.W.2d at 438.  The *Hays* Court contrasted this with *Shallal*, 455 Mich. at 613–14, 621, 566 N.W.2d at 576, 579, where the Michigan Supreme Court held that the plaintiff's threat to the president of the company that she would report him if he did not "straighten up," especially coupled with her meetings with several individuals during which she discussed reporting the president's behavior,

11

was sufficient to create a genuine issue of material fact as to whether she was about to report. *Hays*, 300 Mich. App. at 63, 832 N.W.2d at 438.

Here, the situation is much closer to *Hays* than *Shallal*. There is very little detail surrounding Plaintiff's statement to Mr. Dutcher. However, Plaintiff—in whose favor the Court must construe the pleadings, *see Lambert*, 517 F.3d at 439, and who would have the burden of proving that he was "about to report" by clear and convincing evidence at trial, *Shallal*, 455 Mich. at 611, 566 N.W.2d at 575 (citing M.C.L. § 15.363(4))—asserts that he did not intend to report any Kärcher employees to any authorities. Instead, he argues that he only wanted clarification from the DOJ on whether the general "courtesy bid" practice was illegal. Notably, "[t]he protections of the WPA do not extend 'to one who is perceived to be a whistleblower, but who has not otherwise engaged in protected activity as defined by the act.'" *Allen v. Charter Cnty. of Wayne*, 192 F. App'x 347, 351 (6th Cir. 2006) (quoting *Chandler v. Dowell Schlumberger Inc.*, 456 Mich. 395, 406, 572 N.W.2d 210, 216 (1998)). Thus, given Plaintiff's contentions, the Court cannot find that his desire "to enquire about [his] potential liability demonstrate[d] that []he intended to take any further action and actually report the behavior to a public body." *Hays*, 300 Mich. App. at 63, 832 N.W.2d at 438.

Because the Court concludes that Plaintiff has not alleged conduct that would entitle him to recover under the WPA, his claim for wrongful termination in violation

of Michigan public policy is not precluded. *Rivera v. SVRC Indus., Inc.*, 507 Mich. 962, 959 N.W.2d 704, 705 (2021) ("Because plaintiff has not demonstrated a question of fact that this conduct entitles her to recover under the WPA, her public-policy claim based on this conduct is not preempted by the WPA."); *see also Pace v. Edel-Harrelson*, 499 Mich. 1, 10, 878 N.W.2d 784, 789 (2016) (holding that plaintiff did not engage in a protected activity under the WPA and remanding for consideration of the merits of plaintiff's claim for wrongful discharge in violation of public policy). Defendant's Motion must therefore be denied.

## IV. CONCLUSION

Accordingly, for the reasons articulated above, **IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss (ECF No. 6) is **DENIED**.


**IT IS SO ORDERED**.



/s/ Gershwin Drain_____
GERSHWIN A. DRAIN
UNITED STATES DISTRICT JUDGE

Dated: February 6, 2023

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
February 6, 2023, by electronic and/or ordinary mail.

/s/ Teresa McGovern
Case Manager

14